O’NIELL, O. J.
 

 (dissenting). I concede that, when a person on trial for any crime takes the witness stand, he thereby puts his veracity at issue, as any other witness does, and it is therefore permissible to prove that he committed acts of dishonesty, or crimes tending to show an unworthiness of belief. But it is not permissible to parade the defendant’s escapades before the jury, when the only purpose or effect is to subject him to odium or ridicule, and thereby to prejudice him in the mind of the jury, perhaps without their realizing it.
 

 The defendant in this ease is a young colored man — born August 1, 1902 — of a low order of mentality, and friendless and penniless. When a wretch like that is on trial for his life, the proceedings ought to be conducted with the utmost care to avoid undue prejudice. In this case no attempt was made to prove that the man was ever accused-of any crime of dishonesty, and no attempt to prove that he was guilty of the misdemeanors that he was accused of. No attempt was made to impeach him as a witness, ■ either by proving anything that he denied, or by disproving anything that he avowed in his cross-examination. The only effect which the questions put to him in the cross-examination could have had was to subject him to ridicule and contempt in the estimation of the jury. He was first asked whether he was
 
 *1003
 
 arrested and charged with disturbing the peace, and insult and abuse, on the 24th of October, 1920. That was six years before this murder is alleged to have been committed, and when the' defendant was only 18 years of age. His answer to the question was: “I do not know exactly now.” He was then asked whether he was arrested and charged with loitering on the 12th of April, 1921; that is to say, 4 years before the date of the crime for which he was being tried, and when he was only 19 years of age. 1-Iis answer was: “I disremember, sir.” The next question was whether.he was arrested and charged with loitering, in June, 1921; and his answer was: “I guess so; I don’t know.” Loitering, I suppose, is forbidden by a municipal ordinance. The next question was whether he was arrested and charged with swimming in the new basin, on May 31, 1921; that is, when he was under 19 years of age. His answer was: “No, sir.” He was then, asked whether he was, at the same time, charged with “refusing to move on.” His answer was that he was arrested a couple of times at the address given. Then he was asked whether he was arrested on April 6, 1922, and charged with loitering. His answer was: “I don’t remember.” The next question was whether he was arrested and charged with fighting and' disturbing the peace on the 17th of June, 1923. That was 3 years before the date of the crime charged in this case. Surely that was an attack upon the man’s character for peace and quiet, which had not been put at issue. He was compelled to admit that he had been so arrested and charged with fighting and disturbing the peace. Then he was asked whether, in August, 1923, he was arrested and charged with being a dangerous and suspicious character. The next question . was whether he was arrested in the year 1924 and charged with having no visible means of support. He did not answer that question. Then he was asked whether he was arrested on November 4, 1924, and charged with violating the municipal ordinance authorizing an arrest on the charge of being a dangerous and suspicious character, having no honest means of support, and associating with prostitutes. His answer was: “Yes, sir.” He was then asked whether he was arrested on March 21, 1925, and charged with disturbing the peace, and sentenced by the night court to pay a fine of $10 or be imprisoned for 30 days; and he answered: “Yes, sir.” Then he was asked whether he was arrested on the 2Sth of February, 1926, and charged with disturbing the peace; and he answered that he was so arrested in a raid upon a saloon. Then he was asked whether he was arrested at Poydras and Saratoga streets on the 31st of March, 1926. No charge or accusation— except that he was arrested — was mentioned in that question. He answered: “I guess that is it.” Then he was asked whether he was arrested on May 6, 1926, and again charged with loitering; and he acknowledged that he was so arrested and accused.
 

 All of that cross-examination was admitted over the objection and protest of the defendant’s attorney. So far as the examination tended to show bad character for peace and quiet, it was objectionable and illegal, because the defendant’s character or reputation for peace and quiet was not put at issue. He did not attempt to prove good character; and therefore the prosecuting attorneys had no right to offer proof of bad character or reputation for peace and quiet. As to the boyhood pranks, like swimming in the new basin, or loitering on the street, or refusing to move on, surely they had nothing to do with the question whether the man should be convicted and sent to the gallows for murder.
 

 I respectfully withhold my assent to the decree in this case. It may establish a bad precedent.